```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                       WESTERN DIVISION
```

**SCOTTY MCCOLLUM**
                                                                **PLAINTIFF**

**v.                        CIVIL ACTION NO. 5:11-cv-177-DCB-RHW**

**JACOBS ENGINEERING GROUP, INC.                           DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This False Claims Act retaliation case is before the Court on Defendant's Motion to Dismiss and for Summary Judgment [docket entry no. 15]. The Court, having reviewed the submissions of the parties and the applicable law, concludes that Plaintiff has properly pleaded his claims and is entitled to discovery before defending them on a motion for summary judgment. However, because he has abandoned his state-law claims for extra-contractual damages, those will be dismissed. The motion will therefore be granted in part but otherwise denied.

### I. Facts and Procedural History

In the summer of 2008, Defendant Jacobs Engineering Group, Inc., won a contract to provide "construction management services" for the construction of a new federal women's correctional facility in Aliceville, Alabama. Jacobs contracted with the Federal Bureau of Prisons (FBOP) to provide "'checks and balances' type services related to" the construction of the prison by CaddellYates. Compl. ¶ 11, docket entry no. 1. In October 2008, Jacobs hired Plaintiff Scotty McCollum as a resident field engineer in its Aliceville

office. One of McCollum's principal employment tasks was to produce Independent Government Estimates (IGEs) that were then used to assess the appropriateness of costs contained in Modification Proposal Requests (MPRs) submitted by CaddellYates. In working on the IGEs, McCollum concluded that CaddellYates's pricing on its MPRs "was falsified and/or grossly inflated," and he informed his supervisor and Jacobs's off-site management personnel of that conclusion. Id. ¶¶ 20, 26.

Thereafter, Jacobs placed McCollum on a temporary leave of absence and ultimately terminated McCollum's employment. McCollum filed this lawsuit on December 19, 2011, alleging that he was terminated in retaliation for engaging in protected activity under the False Claims Act (FCA), 31 U.S.C. §§ 3729–3733, and that his termination constituted wrongful discharge under Alabama law. Jacobs moved to dismiss and for summary judgment, arguing that McCollum cannot prove the necessary causal link between any protected activity and his termination and that he fails to state a claim for wrongful termination under Alabama law. The Court has personal and subject matter jurisdiction and is prepared to rule.

## II. Standard

As Jacobs has moved for relief under Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure, two different standards are implicated. In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light

2

most favorable to the plaintiff.'" <u>Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit</u>, 369 F.3d 464, 467 (5th Cir. 2004) (quoting <u>Jones v. Greninger</u>, 188 F.3d 322, 324 (5th Cir. 1999)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id.</u> at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.

 The Supreme Court's examination of the issue in <u>Iqbal</u> provides a framework for examining the sufficiency of a complaint. First, the district court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then

determine whether they plausibly give rise to an entitlement to relief." Id.

Summary judgment is apposite "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted). The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the non-moving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec.

4

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. Summary judgment must be rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III. Analysis

#### A. FCA Retaliation Claim

"The FCA prohibits any person from making false or fraudulent claims for payment to the United States." Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 545 U.S. 409, 411 (2005). The statute provides "a private cause of action for an individual retaliated against by his employer for assisting an FCA investigation or proceeding." Id. at 412. Specifically, the statute provides:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment *because of* lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1) (emphasis added).

Jacobs does not appear to challenge the sufficiency of

McCollum's retaliation claim under Rule 12(b)(6). Nor does it suggest that McCollum's internal complaints were not protected activity under the FCA. Def.'s Mem. at 5 n.4, docket entry no. 16. (assuming "for purposes of this Motion only, that Plaintiff has adequately alleged" a prima facie case of retaliation); see Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948, 951 (5th Cir. 1994) (suggesting that internal complaints may, under some circumstances, be protected activity under the FCA). Rather, Jacobs has submitted evidence of a legitimate, non-retaliatory reason for terminating McCollum: the FBOP customer demanded McCollum be replaced. See Paul Decl., docket entry no. 15-1. Jacobs argues that, in light of this evidence, no reasonable factfinder could conclude that it terminated him "because of his whistleblower activities." Def.'s Mem. ¶ 2. In response, McCollum argues alternatively (1) that he "ought to have had a fair opportunity to engage in discovery in order to develop his proof" before being required to defend against Jacobs's motion for summary judgment and (2) that his affidavit and attachments thereto create genuine issues of material fact as to the causal link between his protected activity and his termination. Pl.'s Mem. at 6, 11-12, docket entry no. 18. Because the Court concludes that McCollum, having properly pleaded a retaliation claim under the FCA, is entitled to discovery prior to the Court's consideration of a motion for summary judgment, it need not assess the substantive arguments on

causation.[1]

Federal Rule of Civil Procedure 56(d) provides:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). Rule 56(d) discovery motions are "broadly favored and should be liberally granted." Culwell v. City of Fort Worth, 468 F.3d 868, 871 (5th Cir. 2006); see also Wichita Falls Office Assocs. v. Banc One Corp., 978 F.2d 915, 919 n.4 (5th Cir. 1992) ("Such 'continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course' unless 'the non-moving party has not diligently pursued discovery of the evidence.'") (quoting International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1267 (5th Cir. 1991)). "[W]hen a party is seeking discovery that is germane to the pending summary judgment motion it is inequitable to pull out the rug from

---

[1] Both parties assume that the McDonnell Douglas burden-shifting framework applicable in employment discrimination cases applies to Plaintiff's FCA retaliation claim and establishes the parameters for proving causation here. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Other courts have so held. See Harrington v. Aggregate Industries Ne. Region, Inc., 668 F.3d 25, 31 (1st Cir. 2012); Scott v. Metropolitan Health Corp., 234 F. App'x 341, 346 (6th Cir. 2007); Turner v. DynMcDermott Petroleum Operations Co., No. 06-1455, 2010 WL 4363403, at *2 (E.D. La. Oct. 21, 2010).

under them by denying such discovery." Wichita Falls, 978 F.2d at 920. A plaintiff seeking discovery under Rule 56(d) "must demonstrate (1) why he needs additional discovery, and (2) how the additional discovery will likely create a genuine issue of material fact." Chenevert v. Springer, 431 F. App'x 284, 287 (5th Cir. 2011) (citation omitted). While McCollum's submissions are not specific as to the way in which discovery "will likely create a genuine issue of material fact," the Court is satisfied that McCollum is entitled to discovery under Rule 56(d). See Nationwide Mut. Fire Ins. Co. v. Sea Breeze Condominiums, No. 1:10cv298-HSO-JMR, 2011 WL 1561014, at *2 (S.D. Miss. Apr. 22, 2011) ("[W]hen a party files a brief opposing the motion for summary judgment and informs the court of the need for additional discovery, these documents can combine to serve 'as the functional equivalent' of a Rule 56[(d)] motion.") (citations omitted).

This case is in its infancy. Jacobs has not yet answered the Complaint, no Local Rule 16(a) Initial Order has been entered, the parties have not exchanged their Local Rule 26(a)(1) initial disclosures or engaged in any other discovery, and the Local Rule 16(e) Case Management Conference has yet to take place. Having properly pleaded his FCA claim, McCollum is entitled to "a reasonable opportunity to prepare the case" before having to support that claim with evidence sufficient to withstand a motion for summary judgment. 10B Charles Alan Wright & Arthur R. Miller,

Federal Practice & Procedure § 2741 (3d ed.); see <u>Hickman v. Taylor</u>, 329 U.S. 495, 501 (1947) ("The various instruments of discovery now serve . . . as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to th[e legal] issues."); Fed. R. Civ. P. 26, cmt. to 1946 amendment ("The purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case."). Put simply, Jacobs's motion for summary judgment is premature. The motion will therefore be denied without prejudice to Jacobs's right to move for summary judgment once McCollum has had an opportunity to conduct discovery.

**B. Wrongful Discharge Claim**

McCollum has also asserted a state-law claim for wrongful discharge. He alleges that Jacobs terminated his employment in violation of an employment contract between the parties. Jacobs, on the other hand, contends that the document relied upon by McCollum did not alter McCollum's employment-at-will status and that his wrongful discharge claim is therefore not cognizable under Alabama law. The parties agree that Alabama law governs McCollum's state-law claim.

"The bedrock principle of Alabama employment law is that, in the absence of a contract providing otherwise, employment in this state is at-will, terminable at the will of either party." <u>Ex parte</u>

9

Amoco Fabrics & Fiber Co., 729 So. 2d 336, 339 (Ala. 1998). In some cases, a "policy contained in an employee manual issued to an employee" can "become a binding promise once it is accepted by the employee." Hoffman-La Roche, Inc. v. Campbell, 512 So. 2d 725, 733 (Ala. 1987). For such an implied contract to arise, first, "the language used in the handbook [or policy manual] must be specific enough to constitute an actual offer rather than a mere general statement of policy." Id. at 734 (citation omitted). "If the provision in the manual meets the contractual requirements for an offer, then [the Court] must determine whether the evidence indicates that the offer was communicated to the employee[ ] . . . ." Ex parte Amoco Fabrics, 729 So. 2d at 339. If so, then the Court should "determine whether . . . the employee[ ] accepted the offer by continuing [his] employment after becoming aware of the offer." Id.

McCollum asserts that Jacobs's Corporate Policy Concerning Business Conduct, Integrity, and Ethics (the Policy) constituted an implied employment contract that Jacobs breached when it terminated him for reporting his suspicions about the IGE process.[2] Compl. Ex.

---

[2] The Court construes Jacobs's Motion as to the wrongful discharge claim as challenging the sufficiency of the pleading under Rule 12(b)(6). See Def.'s at 10 ¶ 2 ("[McCollum's] Complaint fails to state a claim under Alabama state law."). In ruling on a Rule 12(b)(6) motion, the Court "should focus exclusively on what appears in the complaint and its proper attachments." Wilson v. Birnberg, 667 F.3d 591, 595 (5th Cir. 2012) (citation omitted). McCollum attached to his Complaint all of the pertinent documents, and those are therefore properly before the Court.

2. That document was referenced in the Employee Acceptance Statement Jacobs signed when he accepted his offer of employment with Jacobs. Id. Ex. 1 at 3 ("As a further condition of your employment, on your first day of employment, you will be asked to . . . read the Jacobs Corporate Policy concerning Business Conduct, and sign a Statement of Understanding and Compliance. Copies of those documents are attached for your review."). The Policy "is intended to serve as a source of guiding principles" and covers such topics as business conduct, antitrust compliance, the use of inside information, procurement integrity, and government investigations. Id. Ex. 2 at 2 § 1.0. In making his argument, McCollum relies primarily upon three provisions:

> We encourage employees to talk to supervisors, managers, and other appropriate personnel when in doubt about the best course of action in a particular situation and to report violations of laws, rules and regulations to appropriate personnel or through the Integrity Hot Line. *The Company does not tolerate retaliation for reports made in good faith.*

Id. (emphasis added).

> Employees are required to report the following matters to the General Counsel:
>
> . . . .
>
> 6. Incorrect or defective cost or pricing data on public sector projects.
>
> . . . .
>
> 11. Any suspected violation of procurement laws or any Company policy . . . .

Id. at 16-17 § 14.0.

11

> All employees have a moral, and in some cases, a legal obligation to call the Company's attention to any situation in which any Company policy may not be observed. *No discipline or other retaliatory action shall be taken against any employee informing the Company of any violations of any Company policy.*

Id. at 17 § 15.2 (emphasis added). This final statement is comparable to language the Alabama Supreme Court has found sufficiently definite to create an employment contract. E.g., Ex parte Amoco Fabrics, 729 So. 2d at 337–38 ("Whenever it is necessary to reduce the number of employees within a job classification the employee within that classification with the least job seniority will be reduced from that job."); see Hoffman-La Roche, Inc., 512 So. 2d at 736–37 (concluding that handbook language setting forth procedures governing the "five types of termination" was "clear enough that an employee reading it could reasonably believe that, as long as he worked within the guidelines set out in the handbook, he would not be terminated until all procedures set out in the handbook had been followed, including the reasons and circumstances for termination in the handbook"). The language is readily understood "as a promise not to dismiss" in retaliation for whistleblowing. Campisi v. Scoles Cadillac, Inc., 611 So. 2d 296, 299 (Ala. 1992). And there is no question that it was communicated to McCollum, who accepted the offer by (1) accepting employment, and (2) engaging in the sort of whistleblowing contemplated by the Policy. See Ex parte Amoco Fabrics, 729 So. 2d at 339. As such, under Hoffman-La Roche, the

12

elements necessary for the Policy to constitute a contract are present, and McCollum states a claim for wrongful discharge under Alabama law.[3]

However, as Jacobs points out, extra-contractual and punitive damages are typically not available in breach of contract cases under Alabama law. See Nobles v. Rural Cmty. Ins. Servs., 303 F. Supp. 2d 1292, 1301 (M.D. Ala. 2004). And McCollum failed to address this point in response to Jacobs's motion, thereby abandoning any claim for these damages. See Black v. N. Panola Sch. Dist., 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff's] failure to pursue this claim beyond [the] complaint constituted abandonment."). As such, the motion to dismiss will be granted as to McCollum's state-law claims for extra-contractual damages.

### IV. Conclusion

The Court has considered all of the parties' arguments. Those not addressed would not change the result. For the foregoing reasons, **IT IS HEREBY ORDERED THAT** Defendant's Motion to Dismiss and for Summary Judgement [**docket entry no. 15**] is **GRANTED** as to the state-law claims for extra-contractual damages but otherwise **DENIED.** The parties are instructed to contact the magistrate judge to set the case for an initial case management conference.

---

[3] The claim is, in actuality, one for breach of the contract of employment. See Ex Parte Amoco Fabrics, 729 So. 2d at 341 (concluding that employment policy constituted a contract and that "such a contract should be enforced").

So **ORDERED**, this the 4th day of September, 2012.

                                          /s/ David Bramlette
                                          **UNITED STATES DISTRICT JUDGE**